J-S09027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JESSICA LYNN SENG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMIE STONE | : | |
| | : | |
| Appellant | : | No. 1214 EDA 2024 |

Appeal from the Order Entered April 12, 2024
In the Court of Common Pleas of Delaware County Civil Division at
No(s):  CV-2024-080571

BEFORE:   LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                        **FILED JUNE 16, 2025**

Jamie Stone ("Stone") appeals from the order entered by the Delaware County Court of Common Pleas ("trial court") granting the petition filed by his former intimate partner, Jessica Lynn Seng ("Seng"), pursuant to the Protection From Abuse ("PFA") Act.[1]  Finding Stone waived his claims on appeal by failing to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, we affirm.

The trial court summarized the evidence as follows:

> Seng filed a verified [PFA petition] on April 5, 2024.  Seng is a 35-year-old female.  Stone is a 39-year-old male.  Seng resides in Delaware County, Pennsylvania.  Stone resides in North

---

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S. §§ 6101-6122.1.

Carolina. Both Seng and Stone were represented by attorneys at the April 11, 2024, hearing. Seng and her attorney appeared in person. Stone's attorney appeared in person at the hearing, while Stone appeared by telephone.

The parties are internet personalities and/or online content creators. The parties have never met in person. Both parties agreed they had been in an online intimate relationship with each other. Th[e trial] court asked Seng during her direct testimony for clarification on the parties' relationship. Seng testified that she and Stone "spoke romantically, sexually and had plans to meet." Stone admitted that the parties had spoken "intimately." Stone's counsel also admitted that for about "a month [the parties had a] back and forth intimate relationship."

Seng testified as follows: she ended the parties' online, intimate relationship in April of 2022 because of Stone's anger and controlling behaviors. Following her decision to end the relationship, Stone became threatening and harassing towards her. Following their break-up, Stone engaged in an escalating pattern of abusive, harassing, and threatening behavior. Stone immediately responded to the break-up by threatening to "F-up [Seng's] life." Stone then sent to Seng a countdown emoji 3-2-1 with an image of a bomb. Stone's posts and online comments continued for about two years. Seng described that Stone had been regularly "cyber-stalk[ing]" her. Stone created and posted fake and manipulated photos/videos of Seng online, inappropriately commented on Seng's posts, asked Seng to kill herself, and stated he wished he could just kill Seng.

Seng further testified that on April 4, 2024, the most recent occurrence, Stone made or directed 15 posts about Seng. Stone tagged Seng in each post and shared each with his followers. Stone's April 4th posts included not only two fake or manipulated videos, but also proclamations that he wanted Seng dead and that he wished he could kill her.

On April 5, 2024, the very next day after Stone took these actions, Seng filed a Petition for an Emergency Temporary PFA Order. Seng was granted a Temporary PFA Order, and a full hearing was scheduled for April 11, 2024.

During the full hearing on April 11, Stone admitted that he had created a digital image that people understood to be Seng,

- 2 -

that he created and posted videos using that digital image, and that he made multiple posts talking about or referencing Seng. Stone's counsel admitted that Stone created the image and that Stone made and posted videos that purported to depict Seng. Stone boasted that he had deliberately made the digital image of Seng "immediately reproducible" so that he and his followers could easily use or manipulate his images of Seng.

Seng described Stone's videos and posts as sexually inappropriate, threatening, and harassing. In one video or post, Stone commented "I would kill it [referring to Seng] if I could." One of his comments to a post was that Seng "just wanted his dick [sic] again." Stone described Seng as having a "rotted" vagina. Seng noted in her verified Petition that Stone's posts included deepfake manipulated images of Seng performing sexual acts.

Seng testified that Stone had been removed from YouTube due to Stone's harassing and inappropriate posts. Despite being removed, Stone kept posting about Seng, by creating new channels and/or getting followers to post about Seng.

At the end of the hearings on the Final PFA, th[e trial] court found that Stone created the digital image of Seng and posted it multiple times for the purpose of threatening, embarrassing, and harassing Seng. Seng repeatedly asked Stone to stop, but Stone refused. Seng testified she was tagged, and/or identified, in each of Stone's posts and comments. Once tagged, Seng would receive a notice of each post and be subjected to seeing all the comments that followed.

Further, th[e trial] court found all of Seng's testimony to be credible. Seng also demonstrated clear signs of fear of Stone during the hearing. The [trial] court observed Seng crying and shaking both during her testimony and also when Stone spoke.

In addition, th[e trial] court found Stone to be "wholly incredible." Stone was dismissive of Seng and her feelings, and he mischaracterized his own actions. Stone characterized his ongoing pattern of behavior as "like a funny joke ha ha." Stone characterized Seng's filing and her reaction to his abusive behavior as "a complete misunderstanding." Th[e trial] court found nothing funny about Stone's actions and/or his posts.

Th[e trial] court found Stone engaged in a deliberate pattern of harassing and abusive behavior intended to harass, threaten, and intimidate Seng, that could have reasonably led to violence and bodily injury.

Trial Court Opinion, 07/18/2024, at 2-6 (citations and footnotes omitted; parties' names supplied).

Following the hearing, the trial court entered a final PFA order, effective for the three-year period from April 11, 2024, until April 11, 2027. The order prohibited Stone from abusing, harassing, stalking, threatening, attempting to threaten, or contacting Seng, and from possessing or acquiring firearms.

On April 30, 2024, Stone filed a timely notice of appeal. Subsequently, the trial court ordered Stone to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The order stated the following:

> **AND NOW**, to wit, this 20th day of May, 2024, upon [Stone's] filing of Notice of Appeal on May 7, 2024, pursuant to Rule 1925(b) of Pennsylvania Rules of Appellate Procedure, ("Pa.R.A.P."), it is hereby **ORDERED** and **DECREED** that [Stone] shall forthwith file of record in the lower court and serve upon this trial judge a Statement of Errors Complained of on the Appeal ("Statement"), pursuant to Pa.R.A.P. 1925(b)(1). Said Statement to be submitted within twenty-one (21) days of the date of this Order.
>
> Any issue not properly included in the Statement timely filed and served in compliance with this Order and Pa.R.A.P. 1925(b)(4) are waived.

Rule 1925(b) Order, 5/20/2024.

Stone did not file a Rule 1925(b) statement. The trial court issued a Rule 1925(a) opinion, finding that Stone's appeal should be dismissed based

- 4 -

on his failure to file a concise statement. Trial Court Opinion, 07/18/2024, at 7.

On September 3, 2024, Stone filed an application to amend his appellate brief. This Court denied the application, but directed the trial court to determine if there was an administrative breakdown regarding the service of the Rule 1925(b) order on Stone. *See Seng v. Stone*, 1214 EDA 2024 (Pa. Super. Sep. 9, 2024) (per curiam order). On October 2, 2024, the trial court held a hearing on whether there was an administrative breakdown.

At the hearing, Stone's counsel indicated that he provided the court with an incorrect address for his firm at the commencement of the appeal. N.T., 10/02/2024, at 5-6, 9, 12. Sharisse Dickerson ("Dickerson"), an employee of the Delaware Court Office of Judicial Support ("OJS"), testified that the Rule 1925(b) order was mailed to the address on file, which was based on the address listed on the April 30, 2024 notice of appeal. *Id.* at 33, 39, 50. The Rule 1925(b) order was returned by the Postal Service on June 10, 2024 as undeliverable. *Id.* at 83, 88-89.

That same day, Dickerson called and spoke to Stone's counsel, who provided his personal address as an alternative mailing. *See id.* at 87-90. OJS immediately mailed the order to Stone's counsel's personal address. *Id.* at 7, 89. Although Stone's counsel contended he did not receive the order because his local post office had burned down, delaying delivery of mail, Seng's attorney, Lonny Fish, asked the trial court to take judicial notice of the

fact that the post office did not burn down until July 18, 2024, more than a month after Dickerson remailed the 1925(b) order. *Id.* at 7, 91-92. OJS also sent the order to Stone personally on June 10, 2024. *Id.* at 33, 42, 83, 87, 90.

On August 30, 2024, Stone's counsel emailed the OJS, seeking a copy of the Rule 1925(b) order and the trial court's opinion. *Id.* at 33. OJS responded by email on September 3, 2024, attaching the Rule 1925(b) order and a change of address form. *Id.* at 33-34. Stone's counsel never completed the address change form and never filed his 1925(b) statement. *Id.* at 94. Stone's counsel conceded that there was no administrative breakdown at OJS. *Id.* at 86.

Ultimately, the trial court determined "no administrative breakdown occurred, [Stone] acted in bad faith, and [Stone's] [c]ounsel has still not corrected his errors or filed [a] Statement of Matters Complaint of." Trial Court Supplemental Opinion, 10/15/2024, at 1; *see also id.* at 2-3, 13-14.[2] The trial court highlighted that the parties agreed that there was no administrative breakdown, and that the issues in the case were caused by Stone and his counsel. *Id.* at 2, 3-13; *see also id.* at 11 (noting that "[f]or reasons unknown to th[e trial] court, [Stone]'s [c]ounsel never corrected his

---

[2] Additionally, the trial court found that Stone's social media posts "clearly demonstrate that [Stone] is deliberately and actively trying to conceal his whereabouts to avoid service and being held accountable for his contemptuous actions." *See* Trial Court Supplemental Opinion, 10/15/2024, at 13.

address before the scheduled hearing"). The trial court noted that, at the very least, Stone's counsel received the Rule 1925(b) order via email on September 3, 2024. *Id.* at 10. The court concluded that the failure to file the Rule 1925(b) concise statement should result in the dismissal of Stone's appeal. *Id.* at 15.

On appeal, Stone raises the following questions for our review:

1. Was the PFA granted because of materially misrepresented facts by [Seng]?

2. Did the trial [c]ourt err in determining the parties had a relationship of the type that qualifies under Pa. Stat. 23 § 6101, et seq.[]?

3. Did the trial court err in granting the PFA to ineligible parties?

4. [Was Stone's] due process rights infringed?

Stone's Brief at 5.

Before addressing Stone's claims, we must determine whether his failure to file the court-ordered Rule 1925(b) concise statement requires waiver of his claims. It is well settled that when a trial court orders an appellant to file a Rule 1925(b) statement, the appellant must comply in a timely manner. *See Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005). "[F]ailure to comply with the minimal requirements of Pa.R.A.P. 1925(b) will result in automatic waiver of the issues raised." *Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 224 (Pa. Super. 2014) (en banc) (citation and emphasis omitted); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in

- 7 -

accordance with the provision of this paragraph (b)(4) are waived."). "[S]trict application of the bright-line rule … necessitates strict interpretation of the rules regarding notice of Rule 1925(b) orders." ***Greater Erie Indus. Dev. Corp.***, 88 A.3d at 226 (citation and emphasis omitted).

Here, the trial court issued an order that required Stone to submit a Rule 1925(b) statement. Although Stone's counsel alleged he never received the order (as a result of his own failure to provide a correct address to the trial court), he does not dispute he received the order by email in September 2024. Pointedly, on appeal, Stone does not raise any claims related to his failure to file the court-ordered Rule 1925(b) concise statement.[3] Therefore, we conclude that Stone's failure to file a 1925(b) concise statement waives his issues on appeal. ***See*** Pa.R.A.P. 1925(b)(4)(vii); ***Greater Erie Indus. Development Corp.***, 88 A.3d at 223 (affirming trial court where appellant failed to comply timely with the trial court's order to file Rule 1925(b) statement).[4]

_____

[3] In the appendix of his brief, Stone claims the trial court did not issue a Rule 1925(b) order. The record, however, controverts this a claim, as counsel for Stone expressly acknowledged at the hearing that the order was issued.

[4] Stone never sought permission to file his concise statement nunc pro tunc. ***See*** Pa.R.A.P. 1925(c)(2) (stating that "[u]pon application of the appellant and for good cause shown, an appellate court may remand in a civil case for the filing or service nunc pro tunc of a Statement or for amendment or supplementation of a timely filed and served Statement and for a concurrent supplemental opinion"); ***see also*** Pa.R.A.P. 1925, note (stating that nunc pro tunc relief may be granted when "there has been a breakdown in the process

*(Footnote Continued Next Page)*

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/16/2025

---

constituting extraordinary circumstances" or "when non-negligent circumstances, either as they relate to appellant or his counsel occasion delay").